UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


| | |
|---|---|
| Susan Claire Searles, ) | CASE NO.  3:13cv0966 |
| ) | |
| Plaintiff, ) | Judge Jeffrey J. Helmick |
| ) | |
| v. ) | |
| ) | MEMORANDUM OPINION |
| ) | & ORDER |
| Toledo Area Sanitary District, et al., ) | |
| ) | |
| Defendants. ) | |

On March 15, 2013, *pro se* plaintiff Susan Claire Searles filed the above-captioned *in forma pauperis* action against Toledo Area Sanitary District (TASD) Mosquito Control, the Ohio Department of Agriculture, Region 5 of the United States Environmental Protection Agency (EPA), Lucas County Common Pleas Court, the Toledo/Lucas County Health Department, the Ohio Department of Health, Lucas County Commissioners and the Ohio EPA.  She asserts this Court's Federal Question jurisdiction pursuant to 28 U.S.C. § 1331 based on the inclusion of a federal agency as a party defendant.  Plaintiff seeks a Declaratory Judgment ordering defendant TASD to cease all actions that violate local, state, and federal law.

For the reasons set forth below, the Complaint is dismissed pursuant to 28 U.S.C. § 1915(e).

**I. BACKGROUND**

Plaintiff describes herself as a white, college-educated female who resides in Lucas County, Ohio.  She is an "avid home gardener" who is actively involved in the expansion of community

1

gardens in Lucas County. Her concerns over "nerve-poisoning mosquito-spray residue on gardens, yards, recreational areas, workplace and home interiors, and the deteriorating health of Lucas County children and adults, led Plaintiff to conduct interviews and research."(Compl. at 4.) A sizeable percentage of the Complaint includes her findings and conclusions regarding environmental pollutants, presumably based on her research.

Directly below her jurisdictional statement to the Court, Plaintiff sets forth: "Issues to Be Addressed." There, she asks the Court to address her claims of trespass, public health nuisance, negligence, breach of contract, violations of unspecified EPA/FIFRA regulations,[1] Ohio statutes, international treaties and violations of her Constitutional rights under the Fifth and Fourteenth Amendments. The Complaint is then divided into the following four major headings: (1)*Impacts on Public Safety, Security, Health and Environmental Quality;* (2)*Impacts on Air and Water Quality Locally, Internationally, Surrounding Lake Erie, Impacts on Food Safety, Food Security,* (3)*Trade with European Union;* and (4)*Noncompliance, Misrepresentation, Breach of Contract.* Under each of these headings, Plaintiff lists subheadings that intersperse many of the allegations she summarized under "Issues," but also includes her commentary on pollutants released into a community and the potential harm to its citizens. The subheadings also describe how defendants unlawfully engaged in acts or failed to act in compliance with the law.

Plaintiff cites "No-Spray Coalition v. NYC" and "MacAlpine v. Hopper," as legal precedent the defendants have "negligently ignored" and which establish the legitimacy of her federal claim.[2] She avers these cases should have directed TASD to change its spray policy, but were disregarded.

---

[1] The Federal Insecticide, Fungicide, and Rodenticide Act .
[2] The Court was unable to locate any reported or unreported federal case citation for these case captions.

Amongst the overlapping claims she lists in the Complaint, Plaintiff states the defendants violated her rights under the Takings Clause pursuant to the Fifth and Fourteenth Amendments. This is illustrated by TASD's use of "petrochemical biocides" since 1947, which have allegedly deprived Lucas County residents of their "'inalienable' human rights" and the right to enjoy their property free from harm. Moreover, EPA Region 5 and the ODA have neglected to enforce "federal-treaty, state and municipal antipollution codes," thus depriving Lucas County residents' of their right to Equal Protection under the law. She adds that minority families are especially victimized by the mosquito spraying because "their housing is closest to the street, more likely to have windows open on hot summer nights, more likely to have older people sitting on open porches, and more likely to have young people congregated in the streets on summer evenings when the mosquito-spray truck passes." (Compl. at 8.)

## II. STANDARD OF REVIEW

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact, or is frivolous. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996).

## III. STANDING

"Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies'.... As an incident to the elaboration of this bedrock requirement, [the Supreme] Court has always required that a litigant have 'standing' to challenge the action sought to be adjudicated in the lawsuit." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). A private litigant, whether he or she is a legislator, a

3

citizen, or a taxpayer must demonstrate a personal stake in the outcome and demonstrate he or she is the proper party to request adjudication of a particular issue in order to have standing. *Flast v. Cohen*, 392 U.S. 83 (1968). Federal courts do not have the power to render advisory opinions. *F.C.C. v. Pacifica Foundation*, 438 U.S. 726 (1978).

To establish standing under Article III, the following three requirements must be in place: (1) the plaintiff has suffered "an injury in fact," (2) that injury bears a causal connection to the defendant's challenged conduct, and (3) a favorable judicial decision will likely provide the plaintiff with redress from that injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). It is the plaintiff, as the party invoking federal jurisdiction, who bears the burden of establishing these elements. *See Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004).

Plaintiff is obviously aware of her burden and devotes a portion of her Complaint to argue she has sufficiently established standing to bring this action in federal court. She alleges TASD has repeatedly "contaminated" her yard through "spray drifts" after it treated her neighbors' property with chemicals that are allegedly "known to be nerve poisons." (Compl. at 7.) The residue from this spray has "affected the safety of Plaintiff's garden produce." *Id.* The two instances of direct injury by TASD that she recounts in her Complaint are both used to support her trespass claims against TASD, however.

The first instance, for which she does not provide a date, occurred when one of TASD's trucks made a U-turn in the driveway of a house directly across the street from Plaintiff's home. The truck began spraying her neighbor's property while Plaintiff was working in her front yard. At that moment, Plaintiff watched her cat run behind the TASD truck and back toward her home. She claims the cat later suffered difficulty breathing, watery eyes and other "gross symptoms until Plaintiff was forced to have the cat put away by a veterinarian." (Compl. at 7.) She does not allege she suffered or is suffering any physical injury as a result of this incident.

4

The second incident allegedly occurred on the evening of August 25, 2011, while Plaintiff was walking on the street. A TASD truck drove past her at a distance of 50 feet. At the time the truck drove by, the driver sprayed a chemical mist that allegedly traveled quickly on that windy evening. The spray caused Plaintiff "discomfort and irritation . . . for several months." Even when she contacted TASD to request that it delay spraying until later in the evening, TASD allegedly never responded to her letter. She states TASD "presumably" continued to spray when wind speeds exceeded 10 mph, in violation of unspecified EPA regulations.

Without question, general factual allegations of injury resulting from a defendant's conduct may suffice at the pleading stage. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990) (court may "presum[e] that general allegations embrace those specific facts that are necessary to support the claim.") This does not relieve plaintiff's burden to establish an injury in fact, however. The Supreme Court has defined an "injury in fact" as "an invasion of a legally protected interest which is concrete and particularized. *Defenders of Wildlife*, 504 U.S. at 560 (citing *Allen v. Wright*, 468 U.S. 737, 756 (1984); *Warth v. Seldin*, 422 U.S. 490, 508 (1975); *Sierra Club v. Morton,* 405 U.S. 727, 740-41, n. 16 (1972). As an example, the injury alleged must be " 'distinct and palpable,'" *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979) (quoting *Warth*, 422 U.S., at 501), and not "abstract" or "conjectural" or "hypothetical," *Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983); *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). In this context, Plaintiff can only raise those claims for which she suffered a "concrete and particularized" injury.

The Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government---claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large---does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573-74. Therefore, all of Plaintiff's claims regarding injuries to residents of Lucas

5

County cannot be addressed because they do not present an Article III case or controversy for which she has standing to bring. Accordingly the Court will only address those claims for which Plaintiff has alleged an injury in fact.

To the extent Plaintiff sought to file this Complaint on behalf of Lucas County residents, she would be barred by statute. A *pro se* plaintiff cannot represent anyone other than himself or herself in federal court. *See* 28 U.S.C. § 1654; *see, e.g., Duffy v. Kent County Levy Court*, 800 F.Supp.2d 624 (D. Del. 2011) ( non-attorney may represent himself but, in federal court, he may not act as an attorney for other individuals or for an association or corporation); *DePonceau v. Pataki*, 315 F.Supp.2d 338 (W.D.N.Y. 2004) (*pro se* plaintiff lacked standing to file § 1983 complaint on behalf of other individuals, even though they had given him power of attorney); *Lutz v. Lavelle*, 809 F.Supp. 323 (M.D.Pa.1991) (*pro se* plaintiff not entitled to act as attorney for other plaintiff in federal court, even if plaintiffs were friends and entered into contract to permit plaintiff to represent other plaintiff's legal interest).

**IV. CIVIL RIGHTS CLAIMS**

A. *Statutory Authority-42 U.S.C. § 1983*

Original jurisdiction exists pursuant to 28 U.S.C. § 1331 "only [in] those cases in which a well-pleaded Complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Thornton v. Southwest Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir.1990) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27–28(1983)). Whether federal-question jurisdiction exists is governed by the well-pleaded complaint rule, which provides that jurisdiction attaches only when a federal question is presented on the face of the plaintiff's complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

6

Plaintiff has alleged the defendants violated her Constitutional rights, but she does not cite any federal statutory authority to support her claims for relief. However, a failure to reference a specific federal law in a complaint is not necessarily fatal. *See North American Phillips Corp. v. Emery Air Freight Corp.*, 579 F.2d 229, 233 (2d Cir. 1978) (citation omitted). Thus, despite the omission of any federal statute, it is apparent that 42 U.S.C. § 1983 is the requisite statute through which a plaintiff may seek redress for the deprivation of rights established in the Constitution or federal laws. *Baker v. McCollan*, 443 U. S. 137, 144 n. 3 (1979). Therefore, it is only appropriate for the Court to address her allegations of Constitutional violations under section 1983. *See Majeske v. Bay City Bd. of Educ.*, 177 F. Supp.2d 666, 670–71 (E.D. Mich. 2001).

B. *Immunity from Suit*

Before addressing the propriety of Plaintiff's claims under §1983, however, there are several defendants named in the Complaint who are not subject to suit under the statute.

As a sovereign, the United States is immune from suit unless it explicitly waives its immunity. *See United States v. Sherwood*, 312 U.S. 584, 590–91 (1941). Congress defines the exact terms and conditions upon which the government and its agencies may be sued and the terms of its consent define whether a federal court has jurisdiction to entertain suits brought against the United States. *See United States v. Orleans*, 425 U.S. at 814; *Honda v. Clark*, 386 U.S. 484, 501 (1967). A waiver of sovereign immunity must be strictly construed, unequivocally expressed, and cannot be implied. *United States v. King*, 395 U.S. 1, 4 (1969); *Soriano v. United States*, 352 U.S. 270, 276 (1957). Nothing in the Complaint explicitly supports any finding that the United States waived its sovereign immunity for the kind of claims Plaintiff asserts against the EPA in this suit. Although she makes vague references to "violation[s] of EPA/FIFRA regulations" these claims are not sufficiently specific to determine whether the United States has consented to suit. (Compl. at 1.) Therefore, the

7

EPA is entitled to sovereign immunity and this Court lacks subject matter jurisdiction to consider the claims asserted against it.

Under the Eleventh Amendment, all suits against a state and its agencies--- whether seeking injunctive or monetary relief--- are barred. *Latham v. Office of Atty. Gen. of State of Ohio*, 395 F.3d 261, 270 (6th Cir. 2005); *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 152 n. 2 (6th Cir. 1995) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984)). Moreover, where, as here, the Plaintiff requests the Court issue an order directing the State defendants to comply with their own laws, the Supreme Court has explicitly foreclosed this from the reach of federal court jurisdiction. As the Court explained:

> [A] federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment

*Pennhurst State School & Hosp. v. Alderman*, 465 U.S. 89, 106 (1984). Therefore, Plaintiff cannot pursue her Constitutional claims against the Ohio Department of Health or the Ohio EPA as agencies of the State.

Finally, under section 1983, "persons" who may be exposed to legal liability include municipal corporations and other "bodies politic and corporate." *Foster v. Walsh*, 864 F.2d 416, 418 (6th Cir. 1988) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 688 (1978)). Although a county, under Ohio law, "is a body politic and corporate" which "is capable of suing and being sued...", OHIO REV. CODE ANN. § 301.22 , the Sixth Circuit has expressly held that an Ohio municipal court is not an arm of the municipality which it served. *Foster*, 864 F.2d at 418-19. Instead, the Circuit concluded that a county court is a component of the state government and, therefore, insulated from private federal court litigation under the Eleventh Amendment. *Id.*

8

Therefore, Lucas County Common Pleas Court is not a segment of county government, but an arm of the state for purposes of section 1983 liability and Eleventh Amendment immunity analyses. *Mumford v. Basinski*, 105 F.3d 264, 269 (6th Cir. 1997). Accordingly, Plaintiff's section 1983 claims against Lucas County Common Pleas Court cannot stand. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

### C. Fifth Amendment Claims

Plaintiff alleges her rights, as set forth in the Takings Clause under the Fifth Amendment, have been violated. The Fifth Amendment, made applicable to States and their subdivisions through the Fourteenth Amendment, provides "private property [shall not] be taken for public use, without just compensation." U.S. CONST. AMEND. V. To state a claim under the Takings Clause that is ripe for federal court review, Plaintiff must first demonstrate that state compensation procedures, assuming they exist and are adequate, have been exhausted. *River City Capital, L.P. v. Bd of Cty Comm'rs, Clermont Cty, Ohio*, 491 F.3d 301, 306-09 (6th Cir. 2007).

As a property owner, Plaintiff cannot assert a violation of the Takings Clause until she has unsuccessfully attempted to obtain just compensation through the procedures provided by the State for obtaining such recompense. *Id.* The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation. *Williamson Cty Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194-95 (1985). The Fifth Amendment also does not require that payment be made in advance of, or contemporaneously with, the taking. *Id.* All that is required is that a "reasonable, certain and adequate provision for obtaining compensation" exist at the time of the taking. *Id.* If the government has provided an adequate process for obtaining payment, and if resort to that process results in just compensation, then the property owner has no claim against the Government under the Takings Clause. *Id.* Likewise, if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of

9

the Just Compensation Clause until he or she has used the procedure and been denied just compensation. *Id.; see Texas Gas Transmissions, LLC v. Butler County Bd. of Comm'rs*, 625 F.3d 973, 976-77 (6th Cir. 2010).

Constitutional takings claims are not ripe for federal court review until state compensation procedures, assuming they exist and are adequate, have been exhausted. *Williamson Cty Reg'l Planning Comm'n*, 473 U.S. at 195. Therefore, before a federal court can exercise jurisdiction over a claim under the Takings Clause claim, it must ensure that the relevant state compensation procedures are "reasonable, certain, and adequate." *River City Capital, LP v. Bd. of Cty Comm'rs, Clermont Cnty, Ohio*, 491 F.3d 301, 307 (6th Cir. 2007) (citations omitted). The Sixth Circuit has held that Ohio affords such a procedure through an action for mandamus to compel a government entity to institute appropriation proceedings against the private property owner. *Id.* (citing *Coles v. Granville*, 448 F.3d 853, 865 (6th Cir. 2006)); *see Texas Gas Transmissions, LLC*, 625 F.3d at 977. The procedures outlined in Ohio Revised Code §§ 163.01 to 163.22, must be followed regardless of whether a physical or regulatory taking is at issue. *River City Capital, LP*, 491 F.3d at 307.

"Ripeness is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the Complaint must be dismissed." *Texas Gas Transmissions, LLC*, 625 F.3d at 977 (citation omitted). A federal court must determine whether a claim is ripe for review, "even if neither party has raised this issue." *Id.* Although Plaintiff states she has twice filed complaints in the Lucas County Court of Common Pleas, she explains that her request before the court sought the dismissal and replacement of TASD Director David Huey with someone more sympathetic to environmental concerns. This does not demonstrate that she instituted any O.R.C. § 163.01 proceeding in State court, however. Therefore, without addressing the merits of her Constitutional claims, I find these claims are not ripe for adjudication and lack subject matter jurisdiction to consider them.

10

**V. FEDERAL TORT CLAIMS ACT**

Liberally construing Plaintiff's negligence and trespass claims against the EPA, the agency is again entitled to sovereign immunity for any tort claim Plaintiff may be attempting to bring against it. By enacting the Federal Tort Claims Act, Congress did waive the United States' sovereign immunity under very limited circumstances for claims against the federal government arising from torts committed by federal employees who were acting within the scope of their employment. 28 U.S.C. §§ 1346(b)(1), 2679(d)(1); *United States v. Orleans*, 425 U.S. 807 (1976). The strict parameters placed on the United States' consent to suit on these tort claims dictate that they "shall forever be barred unless...presented in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). The timely filing of an administrative claim is a requirement of the FTCA. If the administrative requirements of the FTCA have not been fulfilled, the case must be dismissed for lack of jurisdiction. *Dolan v. U.S.*, 514 F.3d 587, 593 (6th Cir. 2008). This Court is without authority to extend the waiver of immunity beyond what Congress intended. *United States v. Kubrick*, 444 U.S. 111, 118 (1979). Because section 2401(b) is a condition of the United States' waiver of immunity, it must be interpreted solely by reference to federal law.

Plaintiff does not indicate she submitted the proper administrative claim to the EPA prior to filing this lawsuit. While she claims EPA official Bruce Wilkinson "handled Plaintiff's/WLESC's official complaint,"[3] there are no allegations she submitted a Standard Form 95 "Claim for Damage, Injury or Death," to the EPA. Thus, her general allegation that an EPA official handled a joint complaint she filed with the Sierra Club does not satisfy the jurisdictional prerequisite for filing a Federal Tort Claim in this Court.

---

[3] The Court believes this is an acronym for the Western Lake Erie Sierra Club.

**VI. SUPPLEMENTAL JURISDICTION** "[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "In other words, if there is some basis for original jurisdiction, the default assumption is that the court will exercise supplemental jurisdiction over all related claims." *Campanella v. Commerce Exch. Bank*, 137 F.3d 885, 892 (6th Cir. 1998). Based on the foregoing, there are no surviving claims over which this Court has original jurisdiction. Therefore, I will decline to exercise supplemental jurisdiction over Plaintiff's trespass, public nuisance, negligence, and breach of contract claims.

**VII. CONCLUSION**

Accordingly, Plaintiff's application to proceed *in forma pauperis* is granted and this action is dismissed under section 1915(e), but without prejudice to any unexhausted or state law claims she may seek to pursue. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[4]

**So Ordered.**

                                                    s/Jeffrey J. Helmick
                                                  *United States District Judge*

---

[4] 28 U.S.C. § 1915(a)(3) provides: "An appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith."